## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIM CALLAHAN d/b/a TIM'S SUNOCO SERVICE, DAVID AND MARILYN HOLT d/b/a PARSIPPANY SUNOCO SERVICE, CHIMA & BAINS, LTD., SHORELINE ENTERPRISES, LLC f/k/a SHORELINE SUNOCO SERVICE, L.L.C., MICHEL KOPTY d/b/a MICHAEL SUNOCO, STEVEN'S A-PLUS, INC., AUTOMOTIVE MODERN TECHNOLOGIES COMPANY, WEST SENECA ONE STOP, INC., S. N. ENTERPRISES OF WNY, INC., J&B SUNOCO, INC., PATRICK AND EDNA MCGOWAN d/b/a PAT'S ABSECON SUNOCO, AND SAL SALFI, d/b/a AVALON SUNOCO, individually and on behalf of all others similarly situated, | § § § § § § § § § § § § § § § § § | CIVIL ACTION NO. |
| PLAINTIFFS, | § § | |
| v. | § § | CLASS ACTION |
| SUNOCO, INC. and SUNOCO INC (R & M) | § § § § | JURY TRIAL DEMANDED |
| DEFENDANTS. | § § | |

## CLASS ACTION COMPLAINT

Plaintiffs Tim Callahan d/b/a Tim's Sunoco Service, David and Marylin Holt d/b/a

Parsippany Sunoco Service, Chima & Bains, Ltd., Shoreline Enterprises, L.L.C. f/k/a Shoreline

Sunoco Service, L.L.C., Michel Kopty d/b/a Michael Sunoco, Steven's A-Plus, Inc., Automotive

Modern Technologies Company, West Seneca One Stop, Inc., S. N. Enterprises of WNY, Inc.,

J&B Sunoco, Inc., Patrick and Edna McGowan d/b/a Pat's Absecon Sunoco, and Sal Salfi d/b/a

Avalon Sunoco individually and on behalf of a class of all others similarly situated, bring this

action under the Uniform Commercial Code and the Pennsylvania Commercial Code on behalf of a class of similarly situated Sunoco-branded gasoline dealers against Defendants Sunoco, Inc. and Sunoco, Inc.(R & M) (together referred to as "Sunoco"), and for their complaint allege as follows:

## PARTIES

1.      Plaintiff Tim Callahan ("Callahan") formerly operated, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Tim's Sunoco Service, located at Grand Island, New York.  Mr. Callahan purchased gasoline from Sunoco pursuant to an open-price term, and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

2.      Plaintiffs David and Marilyn Holt ("Holts") operate, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Parsippany Sunoco Service, located at Parsippany, New Jersey.  The Holts purchase gasoline from Sunoco pursuant to an open-price term and bring this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

3.      Plaintiff Chima & Bains, Ltd. ("Chima") is a corporation organized under the laws of the State of New York.  Chima, through its president Kala Singh, entered into a Dealer Franchise Agreement with Sunoco, pursuant to which it operates a Sunoco-branded gasoline station known as Chima & Bains Sunoco A-Plus, located at Buffalo, New York.  Chima purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

2

4.      Plaintiff Shoreline Enterprises, L.L.C. ("Shoreline"), formerly known as Shoreline Sunoco Service, L.L.C. is a limited liability company organized under the laws of the State of New Jersey. Shoreline formerly operated a Sunoco-branded gasoline station known as Shoreline Sunoco Service, L.L.C., located at Brick, New Jersey. Shoreline Sunoco Service, L.L.C. was operated pursuant to a Dealer Franchise Agreement between Sunoco and Shoreline's members, Rocky and Carolyn Musico, and purchased gasoline from Sunoco pursuant to an open-price term. Shoreline brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

5.      Plaintiff  Michel Kopty ("Kopty") operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Michael Sunoco, located at Cheecktowga, New York. Mr. Kopty purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

6.      Plaintiff Steven's A-Plus, Inc. ("Steven's") is a corporation organized under the laws of the State of New York. Steven's formerly operated, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Steven's A-Plus, Inc., located at Alden, New York. Steven's purchased gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

7.      Plaintiff Automotive Modern Technologies Company ("Automotive") is an S-corporation organized under the laws of the State of New York. Automotive operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Automotive Modern Technologies Company, located at Tonowanda, New York. Automotive purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on

3

behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

8.     Plaintiff West Seneca One Stop, Inc. ("West Seneca") is a corporation organized under the laws of the State of New York.  West Seneca operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as West Seneca One Stop, Inc., located at West Seneca, New York.  West Seneca purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

9.     Plaintiff S. N. Enterprises of WNY, Inc. ("S. N.") is a corporation organized under the laws of the State of New York.  S. N. operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as S. N. Enterprises of WNY, Inc., located at Cheektowaga, New York.  S. N. purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

10.     Plaintiff J&B Sunoco, Inc. ("J&B") is a corporation organized under the laws of the State of New Jersey.  J&B operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as J&B Sunoco, Inc., located at Old Bridge, New Jersey.  J&B purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

11.     Plaintiffs Patrick and Edna McGowan ("McGowans") formerly operated, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Pat's Absecon Sunoco, located at Absecon, New Jersey.  The McGowans purchased gasoline from Sunoco pursuant to an open-price term and bring this action individually and on behalf of a class

4

of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

12.    Plaintiff Sal Salfi ("Salfi") operates, pursuant to a Dealer Franchise Agreement, a Sunoco-branded gasoline station known as Avalon Sunoco, located at Avalon, New Jersey. Salfi, purchases gasoline from Sunoco pursuant to an open-price term and brings this action individually and on behalf of a class of similarly situated current and former dealers who operate or operated certain Sunoco-branded service stations.

13.    Defendant Sunoco, Inc. is a Pennsylvania corporation headquartered in Philadelphia, Pennsylvania.  Sunoco, Inc. is engaged in, among other things, the business petroleum refining and marketing, oil and gas exploration, and production.  Its marketing operations include the sale of gasoline to wholesale, commercial, industrial and retail customers. It also owns and operates petroleum transportation and terminal facilities.  On information and belief, at all times relevant hereto, Sunoco, Inc.'s business included the marketing of gasoline through Sunoco-branded gasoline outlets in all or part of 23 states located in the Eastern and Midwestern sections of the United States and Washington, D.C., either directly or as the parent of defendant Sunoco, Inc, (R & M).

14.    Defendant Sunoco, Inc.(R & M) is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania.  Sunoco, Inc.(R & M) is a wholly owned subsidiary of Sunoco, Inc. and is in the business of refining and marketing crude oil and its derivatives, including fuels and lubricants and manufacturing certain commodity petrochemicals. It also retails Sunoco-brand gasoline through company owned and leased service stations, and through a chain of convenience stores located in all or part of 23 states located in the Eastern and Midwestern sections of the United States and Washington, D.C.  Dealers of Sunoco-branded gasoline enter into their Dealer Franchise Agreements with Sunoco, Inc.(R & M).

5

## JURISDICTION AND VENUE

15.     This Court has jurisdiction over this action under the diversity of citizenship provisions of 28 U.S.C. § 1332 and under the supplemental jurisdiction provision of 28 U.S.C. §1367.  Plaintiffs are New Jersey and New York residents and Defendants are Pennsylvania corporations, with their principal places of business in Philadelphia, Pennsylvania.  In addition, the amount in controversy for each named Plaintiff, exclusive of interest and costs, exceeds $75,000.

16.     Defendants Sunoco, Inc. and Sunoco, Inc.(R & M) (together referred to as "Sunoco") reside in the Eastern District of Pennsylvania and under 28 U.S.C. § 1391(c) are subject to personal jurisdiction in the Eastern District of Pennsylvania. Venue is therefore proper in the Eastern District of Pennsylvania.  28 U.S.C. § 1391(a)(3).  Venue is also proper in the Eastern District of Pennsylvania because a substantial part of the events giving rise to the claim occurred in the District, including, but not limited to, the sales of gasoline that are the basis of this action.  28 U.S.C. § 1391(a)(2).

## NATURE OF THE ACTION

17.     At all times relevant to this complaint, Sunoco  has leased gas station premises to the proposed class of Dealers and has required that they operate their gas stations, including purchasing gasoline for retail sales, pursuant to a standard Dealer Franchise Agreement.  Sunoco sells branded gasoline to the proposed class of Dealers pursuant to the Dealer Franchise Agreement.

18.     At all relevant times, Sunoco has engaged in a course of conduct, including charging the proposed class of Dealers arbitrary and excessive gasoline prices that have not been set in good faith, in violation of the Dealer Franchise Agreements, the Uniform Commercial Code and Pennsylvania commercial law.

6

19.     At all times relevant to this complaint, Sunoco also has imposed additional policies that prevent the proposed class of Dealers from purchasing gasoline at competitive prices from sources other than Sunoco.

20.     An apparent goal of Sunoco's actions is to eliminate Dealers, including Plaintiffs and the proposed class, from their marketing operations throughout the United States, so as to take over and operate, or eliminate the Dealers' service stations.  Sunoco's goal to eliminate the Dealers has at all relevant times been concealed from them.

21.     The Dealer Franchise Agreements provide that sales of fuel to Plaintiffs and the proposed class are made pursuant to an open-price term.  Under the open-price term provisions of both the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code, Sunoco has an obligation to price the fuel in good faith, with honesty in fact and in a commercially reasonable manner.  Sunoco's ongoing conduct violates their obligation to price their products in good faith. Uniform Commercial Code §§ 1-201, 1-203, 2-103, and 2-305, and 13 Pa.C.S. §§ 1201, 1203, 2103, and 2305.

## CLASS ACTION ALLEGATIONS

22.     Plaintiffs bring this action on behalf of themselves and as a class action under the provisions of Rule 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class:

> All individuals and entities that lease or have leased service stations from Sunoco, pursuant to a Dealer Franchise Agreement, during the period from August 1, 1999 through the present, and who have purchased Sunoco-branded gasoline pursuant to an open-price term.

23.     Excluded from the class is Sunoco and its corporate parents, subsidiaries or affiliates.

7

24.     Plaintiffs believe that there are more than a thousand class members. Information regarding the exact number and identities of the members of the class is in the exclusive control of Defendants.

25.     The class is so numerous and geographically dispersed that joinder of all members is impracticable.

26.     There are questions of law or fact common to the class including, but not limited to:

(a)     Whether Sunoco breached the open-price term provision of sections 1203 and 2305 of the Pennsylvania Uniform Commercial Code and sections 1-203 and 2-305 of the Uniform Commercial Code;

(b)     Whether Sunoco breached its obligation to market gasoline to Plaintiffs and the proposed class in good faith, with honesty in fact, and in a commercially reasonable manner;

(c)     Whether Sunoco's alleged conduct constitutes a breach of the Dealer Franchise Agreement that Plaintiffs and all members of the proposed class entered into with Defendants;

(d)     Whether Sunoco's conduct caused damage to Plaintiffs and the members of the proposed class; and

(e)     The appropriate measure of damages sustained by Plaintiffs and the members of the proposed class.

27.     The claims of Plaintiffs are typical of the claims of the class in that Plaintiffs and the members of the proposed class are all Dealers who operate under a standard Dealer Franchise Agreement and whose damages arise from and were caused by the same conduct engaged in by Sunoco.

28.     Plaintiffs will fairly and adequately protect the interests of the class.  Plaintiffs are members of the class that they seek to represent, and their interests are coincident with and not antagonistic to those of the other members of the class.  In addition, counsel who are competent and experienced in the prosecution of class action litigation represent Plaintiffs.

8

29.     Class action status is warranted under Rule 23(b)(3) because the questions of law and fact common to the members of the class predominate over any question affecting only individual members, and because  proceeding as a class action is superior to the other available methods for the fair and efficient adjudication of the controversy.  Class action treatment will permit a large number of injured persons to prosecute their common claims in a single forum simultaneously, efficiently and without unnecessary duplication of evidence and effort.  Class action treatment will further permit the adjudication of claims by class members who otherwise could not afford to litigate individually these claims against these large corporate Defendants. Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

30.     Class action status is also warranted under Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive, declaratory, or other appropriate equitable relief with respect to the Class as a whole.

## FACTUAL ALLEGATIONS

### Gasoline Marketing to Dealers

31.     Sunoco generally distributes and markets Sunoco-branded gasoline to consumers in four ways:

(a)     Sunoco directly owns and operates a network of Sunoco retail stations (salary operated retail outlets);

(b)     Sunoco contracts with station owners who operate Sunoco retail stations (contract operated retail outlets);

(c)     Sunoco leases stations and sells Sunoco-branded gasoline to lessees, known as Dealers, who sell Sunoco-branded gasoline to retail customers; and

(d)     Sunoco sells gasoline to "jobbers" (jobber stations).  The jobbers then supply Sunoco-branded gasoline to Sunoco-branded stations run either by the jobber or by other persons under a contractual relationship with the jobber.

32.    Sunoco sells gasoline directly to contract operated retail outlets and to the proposed class of Dealers' retail outlets, making delivery in either their own delivery trucks or in the delivery trucks of those with whom they have contracted to make such deliveries.  The proposed class of Dealers and contract operated retail outlets are charged Sunoco's Dealer Tank Wagon prices existing at the time the fuel is delivered to the purchasing Dealer.  Sunoco's Dealer Tank Wagon prices are established at Sunoco's sole discretion.

33.    Sunoco monitors the proposed class of Dealers' and others' retail prices for Sunoco-branded gasoline through their territory representatives and through their credit card and debit card payment systems.  Sunoco also monitors competitors' retail prices for gasoline.

34.    Sunoco uses its Dealer Tank Wagon prices to dictate the proposed class of Dealers' margins.  The margin is the difference between the Dealer Tank Wagon price and the retail price Dealers charge for each gallon of gasoline.  By dictating their margins, Sunoco uses its Dealer Tank Wagon price to influence the proposed class of Dealers' business activities, including threatening Dealers with low margins and punishing Dealers by setting their Dealer price so as to provide small margins.

35.    Sunoco charges the proposed class of Dealers substantially higher prices for Sunoco-branded gasoline than they charge other gasoline station owners or operators.  Sunoco also prevents Dealers from purchasing Sunoco-branded gasoline from other sources at lower prices.

36.     Defendants dictate gasoline purchase terms for the proposed class of Dealers. They set Dealers' gasoline inventory, including the timing and volume of deliveries to Dealers' stations.

### Sunoco's Dealer Franchise Agreements

37.     Plaintiffs and the members of the proposed class each entered into standard Dealer Franchise Agreements ("Agreements") with Sunoco, which includes, among other things, the terms and conditions covering their purchase of Sunoco-branded gasoline, and the lease and operation of their gas stations.  The language and provisions in the Agreements are the same or substantially similar in all Dealers' Agreements.  The terms of the Agreements may not be negotiated or otherwise altered.  In addition, Dealers are presented with the Agreements on a take it or leave it basis.

38.     Each Agreement provides that Sunoco will supply gasoline to Dealers pursuant to an open-price term rather than at a fixed or posted price, or pursuant to a formula or calculation.

39.     The Uniform Commercial Code and the Pennsylvania Uniform Commercial Code mandate that such open-price terms be administered in good faith.  Good faith is defined as honesty in fact and in a commercially reasonable manner.

### Defendants' Salary Operated Retail Outlets Compete Unfairly Against Dealers

40.     Sunoco directly competes against Plaintiffs and the proposed class of Dealers by selling Sunoco-branded gasoline to the public through salary operated retail outlets at substantially discounted retail prices.  At times, those prices are less than Dealers' break-even price, or even below the Dealer Tank Wagon prices Sunoco charges the proposed class of Dealers for Sunoco-branded gasoline.

41.     The discounts Sunoco provides to salary operated retail outlets cannot be justified as a functional discount or as the result of a difference in cost.

42.     Because each Sunoco-branded station uses the Sunoco name and has the look of a Sunoco station, the proposed class of Dealers' stations and salary operated retail outlets are in many respects indistinguishable to the public, except for price.

43.     Sunoco's salary operated retail outlets compete unfairly with the proposed class of Dealers' stations, which are engaged in a substantially identical business.

### Defendants' Bad Faith Practice of Offering Substantial Discounts to Jobbers

44.     Defendants' jobbers purchase Sunoco-branded gasoline at terminals and refineries located in the United States at a "rack price" established by Sunoco.  Rack prices are electronically communicated to jobbers on a daily basis, frequently through a satellite communications system called the Data Transmission Network or over the internet.  Jobbers are responsible for transportation of their gasoline purchases.  Defendants have engaged in an ongoing practice of giving jobbers substantial discounts on the price of gasoline.

45.     The rack price paid by Sunoco's jobbers is substantially lower than the Dealer Tank Wagon price Sunoco charges Plaintiffs and the proposed class.  The cost of delivery to Dealers' stations does not justify the price differential.

46.     The difference between rack prices and Dealer prices cannot be justified as a "functional discount."  It does not constitute a reasonable reimbursement for actual marketing functions performed at the wholesale and retail levels.  The substantially lower price given to jobbers greatly exceeds the value of any additional functions they may perform.  The added functions performed by the jobbers do not result in actual costs, legal risks and/or investments that would justify the discount enjoyed by the non-Dealer stations.

47.     Likewise, Sunoco cannot justify the difference between the rack price for jobbers and the Dealer Tank Wagon price as a difference in cost.  The cost of manufacturing the gasoline for both is substantially identical, as are the transportation rates and the quantities ordered.  Even

if Sunoco's lower price for jobbers could be considered a volume discount, this discount is not available to the Dealers.

48.     The jobber stations compete unfairly with the proposed class of Dealers' stations, which are engaged in substantially identical businesses.

49.     Because Dealers are forced to pay the Dealer Tank Wagon price for the gasoline they sell to the public, the proposed class of Dealers' gasoline costs exceed the gasoline costs of salary operated retail outlets and jobber stations. In some instances, Dealers' prices have exceeded the retail price at salary operated retail outlets and jobber stations. In order to maintain sales volume, Dealers must lower their margins below those at non-Dealer stations or even accept no margin on their gasoline sales. Alternatively, Dealers can keep prices high enough to make a reasonable margin and, in the process, lose customers and sales volume to non-Dealer stations. Therefore, Plaintiffs and the proposed class are prevented from competing against other stations and, in many instances, have been forced out of business.

## Unfair Discounts for Non-Branded Gasoline Sales

50.     Sunoco also provides substantial discounts on the price of non-branded gasoline sold to certain entities that sell unbranded gasoline. Many of these entities, in addition to selling unbranded gasoline, also sell other goods such as convenience store items.

51.     The entities selling unbranded gasoline also compete with the proposed class of Dealers, and the discounts provided to such entities cannot be justified as functional or the result of a difference in cost.

## Contract Operated Retail Outlets

52.     Sunoco enters into Dealer Supply Franchise Agreements with contract operated retail outlets which includes, among other things, the terms and conditions covering their purchase of Sunoco-branded gasoline.

13

53.     Sunoco sells gasoline directly to contract operated retail outlets, making delivery in either their own delivery trucks or in the delivery trucks of those with whom they have contracted to make such deliveries.  The contract operated retail outlets are charged Sunoco's Dealer Tank Wagon prices existing at the time the fuel is delivered to the purchasing Dealer. Sunoco's Dealer Tank Wagon prices are established at their sole discretion.

54.     Contract operated retail outlets use the Sunoco name and have the look of a Sunoco station and are, in many respects, indistinguishable from Dealers' stations and salary operated retail outlets.

## COUNT ONE
## BREACH OF CONTRACT (Open-Price Term)

55.     Plaintiffs re-allege and incorporate for all purposes the preceding paragraphs of their complaint.

56.     Plaintiffs' and the proposed class members' Dealer Franchise Agreements with Sunoco, contain an open-price term for the sale of gasoline, which require Sunoco to set the price for the gasoline in good faith.

57.     The open-price term provisions of the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code obligate Sunoco to price gasoline sold to Plaintiffs and the proposed class with honesty in fact and commercial reasonableness.

58.     Sunoco has violated both prongs of the open-price term provisions of the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code.  They have not set the price to Plaintiffs and the proposed class for Sunoco-branded gasoline in good faith and have thus violated their Dealer Franchise Agreements and commercial law.

59.     Sunoco has not set the price for Sunoco-branded gasoline in a commercially

14

reasonable manner and has not been honest in fact because they have concealed their plan to drive Plaintiffs and the other proposed class members out of business.

60.     Plaintiffs and the proposed class have been damaged by Sunoco's conduct and are entitled to actual damages resulting from Sunoco's breach of the open-price term provisions of the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code. .

61.     All conditions precedent to Plaintiffs' and the proposed class's right to recover for Defendants' breach of their Agreements have occurred or have been performed, waived, or excused.

**COUNT TWO**
**DECLARATORY JUDGMENT**

62.     Plaintiffs re-allege and incorporate for all purposes the preceding paragraphs of their complaint.

63.     This is a claim for a Declaratory Judgment under the provisions of the Federal Declaratory Judgment Act, 28 U.S.C. §§2201, 2202, and this Court's inherent power to declare the rights and other legal relationships between the parties.

64.     There is an actual controversy between the parties concerning the Defendants' breach of the open-price term provision of the Agreements between the proposed class of Dealers and Sunoco.  As alleged above, Defendants have violated both prongs of the open-price term provisions of the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code.  They have not set the price to Plaintiffs and the proposed class for Sunoco-branded gasoline in good faith, and have thus violated their contracts with them.  Defendants have also not set the price for Sunoco-branded gasoline in a commercially reasonable manner and have not been honest in fact because they have concealed their plan to drive Plaintiffs and the other proposed class members out of business.  Plaintiffs therefore seek a declaratory judgment that

Defendants are required to set their prices for Sunoco-branded gasoline in good faith and in a commercially reasonable manner.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of the proposed class, pray as follows:

(a)   That the Court determine that this action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)   That Plaintiffs and the proposed class have a trial by jury on all issues so triable;

(c)   That Defendants' conduct be adjudged to have breached the open-price term provisions of the Uniform Commercial Code and the Pennsylvania Uniform Commercial Code and that this Court declare that Defendants are required to set Dealers' prices for Sunoco-branded gasoline in good faith and in a commercially reasonable manner.

(d)   That judgment be entered for Plaintiffs and the members of the proposed class against Defendants for damages sustained by Plaintiffs and the proposed class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

(e)   That judgment be entered for Plaintiffs and the members of the proposed class for pre- and post-judgment interest in the maximum amount allowed by law;

(f)   That all Defendants, including their successors, assignees, subsidiaries and transferees, their officers, directors, agents, employees and all other persons acting or claiming to act on behalf thereof or in concert therewith, be perpetually enjoined and restrained, either directly or indirectly, from continuing, maintaining or renewing the aforesaid activities, or adopting or following any practice, plan, program or design, having a similar purpose or effect; and

(g)   That Plaintiffs and members of the proposed class have such other relief as the Court may deem just and proper under the circumstances.

16

Date: August 1, 2003

Respectfully submitted,

Krishna B. Narine (Attorney I.D. 52238)
Stephen Connolly (Attorney I.D. 86130)
**SCHIFFRIN & BARROWAY, LLP**
Three Bala Plaza East
Suite 400
Bala Cynwyd, PA 19004
Telephone:  (610) 667-7706
Fax: (610) 667-7056